## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **JOHN TEMPLE,** individually and on behalf of all others similarly situated, | Case No. 8:18-cv-176-T-36JSS |
| *Plaintiff,* | |
| v. | **CLASS ACTION COMPLAINT** |
| **BEST RATE HOLDINGS, LLC**, a Delaware limited liability company, and **LENDING TREE, INC.**, a Delaware corporation. | |
| *Defendants.* | **JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT

Plaintiff John Temple ("Temple" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendants Best Rate Holdings, LLC and Lending Tree, Inc. ("Defendants") to stop their practice of sending unsolicited text messages to cellular telephones by failing to honor the recipient's revocation of prior express written consent, and to obtain redress for all persons injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1.      Plaintiff is a natural person and domiciled in the State of Mississippi.

2.      Defendant Best Rate Holdings, LLC is a limited liability company organized and existing under the laws of the State of Delaware whose primary place of business is located at 4800 140th Street, Suite 101, Clearwater, Florida 33762.

3.      Defendant Lending Tree, Inc. is a corporation incorporated and existing under the



laws of the State of Delaware whose primary place of business and corporate headquarters is located at 11115 Rushmore Drive, Charlotte, North Carolina 28277.

## JURISDICTION & VENUE

4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") a federal statute.

5.    The Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants are registered to do business in the State of Florida, regularly conduct business in the State of Florida and in this District, a substantial part of the events or omissions giving rise to the claim occurred in the State of Florida, and Defendant Best Rate Holdings, LLC's primary place of business is in the State of Florida and in this District.

## COMMON ALLEGATIONS OF FACT

### A.    Bulk SMS Marketing

6.    In recent years, marketers who have felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked for alternative technologies through which to send bulk advertisements on the cheap.

7.    Bulk text messaging, or SMS marketing, has emerged as a direct method of communicating and soliciting consumer business. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters. An SMS message is a text message call directed to a wireless device through the use of the telephone number assigned to the device.

8.    When an SMS message call is successfully made, the recipient's cell phone rings

or vibrates, alerting him or her that a call is being received. As cellular telephones are mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide and instantaneously.

**B.      Defendants Transmit Text Messages to Consumers Who Do Not Want Them**

9.      Best Rate Holdings, LLC ("Best Rate") is a mortgage marketing company that purports to sell a variety of products, including but not limited to: (1) marketing leads for mortgage providers; (2) "live transfer" services, which involves trained telemarketers employed on the client's behalf to contact potential customers; and (3) various contact lists with contact information for businesses to use on their own.

10.      Lending Tree, Inc. ("Lending Tree") is a financial services provider that provides customers with the ability to complete one loan request and receive multiple offers from its marketplace of lenders, which purports to contain hundreds of lenders.

11.      In an effort to promote Lending Tree's business, Defendants worked together to reach a broad array of consumers. That is, Lending Tree contracted with and hired Best Rate to provide marketing leads, live transfer services, and/or various contact lists. In short, Defendants utilized bulk SMS messaging campaigns to solicit consumers for Lending Tree's mortgage products.

12.      In order to acquire consent for the text messages, Defendants solicited consumers with marketing campaigns sent to potential consumers' email addresses. Consumers were, via email, instructed to input their contact information into an online form in order to be contacted with offers.

13.      Once potential consumers input their information, they would begin receiving text

messages from Defendants sent from "short code" 532-94. A short code is akin to a telephone number for text messages and is indicative of autodialer technology.

14.     Defendants made, or had made on their behalf, the same (or substantially the same) text message calls *en masse* to thousands of cellular telephone numbers throughout the United States, using the same short code.

15.     In sending the text messages at issue in this Complaint, Defendants utilized an automatic telephone dialing system. Specifically, the hardware and software used by Defendants (or their agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendants' automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention). Defendant's used the same short code to send the messages.

**C.     Defendants Transmit Text Messages to Consumers Who Have Expressly Opted-Out**

16.     The problem for the Defendants stems from their refusal to honor properly submitted opt-out requests.

17.     That is, Defendants send unauthorized SMS text messages to cellular subscribers who have expressly "opted-out" or requested not to receive text messages by responding "STOP" or with similar commands. Even though Defendants did initially obtain prior express consent, Defendants were still required to honor each STOP request as a clear expression of intent to terminate any prior consent. Accordingly, any SMS text message (other than a final, one-time confirmation text message confirming the recipient's desire to not receive such messages) sent to a cellular subscriber after receiving an express STOP or similar request was

sent without prior express consent in violation of the TCPA.

18.     To help mobile marketers navigate regulatory compliance, the Mobile Marketing Association ("MMA") publishes specific guidelines based on accepted industry practices for all mobile marketers. Those guidelines include industry best practices for processing and honoring stop requests from consumers.

19.     The FCC has made clear that companies must provide an opt-out mechanism in their text messages and that—at most—a single text may be sent after the consumer exercises his/her right to opt out confirming the opt out. *See In re Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991, Declaratory Ruling as to Petition of SoundBite Communications, Inc.,* CG Docket No. 20–278 (Nov. 29, 2012) ("*SoundBite Ruling* "); *see also Gager v. Dell Fin. Servs., LLC,* 727 F.3d 265, 272 (3d Cir. 2013) ("In sum, we find that the TCPA provides consumers with the right to revoke their prior express consent to be contacted on cellular phones by autodialing systems."); *see also Munro v. King Broad. Co.,* No. C13-1308JLR, 2013 WL 6185233, at \*3 (W.D. Wash. Nov. 26, 2013) ("[T]he weight of authority suggests that consent may be revoked under the TCPA and that if messages continue after consent is revoked, those messages violate the TCPA.") (unpublished decision) (collecting cases).

20.     Indeed, the MMA's October 2012 U.S. Consumer Best Practices for Messaging echoes this standard by stating, "[a] subscriber must be able to stop participating and receiving messages from any program by sending STOP to the short code used for that program. . . END, CANCEL, UNSUBSCRIBE, or QUIT should also be opt-out key words for all programs; however content providers should feature the word STOP in their advertising and messaging. . . When sent, these words cancel the subscriber's previous opt-in for messaging." Further, "[t]he

content provider must record and store all opt-out transactions."

21.    CTIA [1] similarly advises that "[s]hortcode programs must respond to, at a minimum, the universal keywords STOP, END, CANCEL, UNSUBSCRIBE, and QUIT . . . and, if the user is subscribed, by opting the user out of the program." Further, "[r]ecurring programs must promote opt-out instructions at regular intervals in content or service messages, at least once per month," and "[u]sers must be able to opt out at any time." *See* CTIA Compliance Assurance Solution Mobile Commerce Compliance Handbook, Version 1.2, effective August 1, 2013.

22.    Defendants ignore the FCC and industry guidelines. Instead, Defendants fail to honor requests by consumers to opt-out or unsubscribe to the SMS text messages.

23.    Despite receiving an express stop request from Plaintiff and other cellular subscribers, Defendants continue to send automated text messages to these subscribers.

24.    Defendants know, or act in conscious disregard of the fact, that their SMS text messages to these cellular subscribers are unauthorized. Reply message STOP requests are, by design, sent to Defendants' short code, 532-94, thereby directly informing Defendants that any subsequent messages are unauthorized. Ultimately, consumers are forced to bear the costs and annoyance of receiving these unsolicited and unauthorized text messages.

**D.    Plaintiff's Experience with Defendants**

25.    In February 2017, Plaintiff Temple received an email message from Defendants, which purported to offer one-percent mortgage loans for military veterans.

26.    Being a veteran of the United States Air Force, Plaintiff decided to enter his

---

[1] The CTIA is an international non-profit organization that audits and enforces the rules surrounding carrier-based text messaging programs. Together, the MMA and the CTIA establish and publish guidelines setting forth accepted industry best practices for mobile marketing.

contact information to learn more.

27.    Plaintiff then began receiving text messages from Defendants stating:

"We matched you with a Mortgage Lender to buy a home. 866-721-0351



**http://1bestmortgagerate.com/E8YH25S** Text STOP to halt"

28.    Plaintiff continued to receive virtually identical text messages on a regular basis, approximately once a week.

29.    Every text message contained a telephone number, 866-721-0351, which when dialed connects Plaintiff directly with Defendant Lending Tree.

30.    Additionally, each text message contained a link, http://1bestmortgagerate.com, that directs Plaintiff to the website https://mortgageadvisor.com, which is a website owned and operated by Defendant Best Rate Holdings, LLC.

31.    Despite the promise of low mortgage rates for veterans, Plaintiff never received any such offers. As a result, Plaintiff decided to opt out of receiving additional text messages.

32.    Despite repeated attempts, including different variations of the word stop, such as

"STOP" and "Stop," Defendants refused to end the transmission of text messages and likewise never confirmed the receipt of the STOP requests:



33.     Plaintiff grew increasingly frustrated by the inability to stop the repeated harassing text messages being sent by Defendants. Plaintiff sent multiple messages with only one term, "Stop," to Defendants short code. Still Defendants refused to cease their unauthorized solicitation:



34.     By continuing to make unauthorized text message calls as alleged herein, Defendants have caused Plaintiff and other consumers actual harm and cognizable legal injury. This includes the aggravation, nuisance, and invasion of privacy that results from the receipt of such unwanted text messages in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such text messages. Furthermore, the text messages interfered with Plaintiff's and the other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. The text messages were annoying and persisted despite being told to Stop. Defendants also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and appropriating cellular minutes and data.

35.     In the present case, a consumer could be subjected to many unsolicited text messages as Defendants do not provide any functioning mechanism to opt out and thus fail to honor opt out requests or even acknowledge the receipt of opt out requests.

36.     Having tried to no avail to get the messages to stop, Plaintiff, on behalf of himself and a class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("47 U.S.C. § 227"), which prohibits unsolicited voice and text calls to cell phones--to end the unlawful conduct of Defendants.

37.     On behalf of the Class, Plaintiff also seeks an injunction requiring Defendants to cease all wireless spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of

the following Class:

> **Replied Stop Class:** All persons in the United States who (1) from the last four years to the present, (2) received on their cellphone at least one text message from Defendants, (3) replied to the text message with the words STOP, END, CANCEL, or similar language, and (4) thereafter received at least one additional text message to their same cellphone number other than a message simply confirming their opt out request.

39.    The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definition following discovery regarding the size and scope of the alleged class.

40.    On information and belief, there are hundreds, if not thousands, of members of the Class such that joinder of all members is impracticable.

41.    There are several questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class members that may be answered in a single stroke include but are not limited to the following:

> a.    whether Defendants' conduct constitutes a violation of the TCPA;
>
> b.    whether Defendants utilized an automatic telephone dialing system to send text messages to members of the Class;
>
> c.    whether members of the Class are entitled to treble damages based on the

willfulness of Defendants' conduct;

d.   whether members of the Replied Stop class revoked their consent by responding STOP, END, CANCEL or with similar language; and

e.   to the extent Defendants' conduct does not constitute telemarketing, whether Defendant obtained prior express oral consent to contact any class members.

42.   The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class, including the annoyance and aggravation associated with such messages as well as the loss of data and temporary inability to enjoy and use their cellphones, as a result of the transmission of the wireless spam alleged herein. Plaintiff and the other members of the Class have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct of transmitting wireless spam. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct. Plaintiff, like other members of the Class, received unsolicited spam text message calls from Defendants. Plaintiff is advancing the same claims and legal theory on behalf of himself and all absent members of the Class.

43.   Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the

members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

44.     The suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted, and/or have refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief. As the messages continue to be sent in spite of Plaintiff's and the Class Members' STOP requests, injunctive relief is necessary and appropriate to require Defendants to discontinue sending unsolicited and unauthorized spam text messages. Likewise, Defendants have acted and fail to act on grounds generally applicable to the Plaintiff and the other members of the Class in transmitting the wireless spam at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

45.     In addition, this suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The claims asserted herein are applicable to all customers throughout the United States who received an unsolicited spam text message from Defendants. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the

members of the Class could afford such litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

46.     Adequate notice can be given to the members of the Class directly using information maintained in Defendants' records or through notice by publication.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Replied Stop Class)**

47.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

48.     Defendants and/or their agent(s) transmitted unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the Replied Stop Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

49.     The telephone dialing equipment utilized by Defendants and/or their agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

50.     These text calls were made *en masse* and without the consent of the Plaintiff and the other members of the Replied Stop Class to receive such wireless spam. Indeed, consent had

been revoked by everyone since they each had responded with the common SMS codes to opt-out of further communications, such as "STOP," "REMOVE," "OPT OUT." or "CANCEL."

51.     The text messages to Plaintiff and the Replied Stop Class were made after any consent had been expressly revoked by responding with an opt-out request, such as STOP, END, CANCEL, or similar language. This alone violates the TCPA.

52.     Additionally, Defendants' supposed opt out mechanism is not cost free. Among other things, it requires the transmission of data from the user's cell phone that results in a reduction of the user's allowable data.

53.     Based on such conduct, Defendants has violated 47 U.S.C. § 227(b)(1)(A)(iii).

54.     Additionally, because the messages steadily continue despite multiple requests that they STOP, the violations are capable of repetition, even if Defendants were to temporarily place them on hold.

55.     As a result of such conduct, Plaintiff and the other members of the Replied Stop Class are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

56.     Defendants' conduct was willful. Defendants had notice of the Stop requests. In the event that the Court determines that Defendants' conduct was willful and knowing, it may, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class. Defendants received the STOP requests and similar opt out instructions and therefore was on notice that its text messages were being transmitted in violation of the TCPA.

**WHEREFORE,** Plaintiff Temple, on behalf of himself and the class, prays for the following relief:

1.  An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Temple as the representative of the Class and appointing his attorneys as Class Counsel;

2.  An award of actual and statutory damages to be paid into a common fund for the benefit of the Class;

3.  An injunction requiring Defendants to cease all unsolicited text messaging and to honor opt out requests, and otherwise protecting the interests of the Class;

4.  An award of reasonable attorneys' fees and costs to be paid out of the common fund;

5.  A declaration that Defendants' conduct violated the TCPA;

6.  A declaration that Defendants' dialing equipment constitutes an automatic telephone dialing system under the TCPA; and

7.  Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: January 17, 2018

JOHN TEMPLE, individually, and on behalf of all others similarly situated,

By: _s/Ryan S. Shipp_____
One of Plaintiff's Attorneys

Ryan S. Shipp, Esq.
Florida Bar Number: 52883
**Law Office of Ryan S. Shipp, PLLC**
814 W. Lantana Rd. Suite 1,
Lantana, Florida 33462
(561) 699-0399
Primary Email: Ryan@shipplawoffice.com

Steven L. Woodrow
(swoodrow@woodrowpeluso.com)*
Patrick H. Peluso
(ppeluso@woodrowpeluso.com)*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Counsel for Plaintiff and the Putative Class*

*pro hac vice* admission to be filed