IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| JOHN TEMPLE, individually and on behalf of all others similarly situated,<br><br>**Plaintiff,**<br><br>v.<br><br>**BEST RATE HOLDINGS, LLC and LENDINGTREE, INC.**<br><br>**Defendants.** | Case No. 8:18-cv-176-T-36JSS |

**MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW**

Defendant LendingTree, Inc. ("LendingTree"),[1] by its undersigned counsel, respectfully submits this Motion to Compel Arbitration and Stay Proceedings and Incorporated Memorandum of Law.  In support thereof, LendingTree incorporates by reference Defendant Best Rate Holdings, LLC's Motion to Compel Arbitration (ECF No. 18), and further states as follows:

**INTRODUCTION**

The Supreme Court has made clear that there is a presumption of arbitrability where a contract contains an arbitration clause. *AT&T Technologies, Inc. v. Communications Workers of America, et al.*, 475 U.S. 643, 650 (1986). Stated simply, "the [Federal Arbitration] Act leaves no room for the exercise of discretion by the district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd,* 470, U.S. 213, 213 (1985) (emphasis in original).

---

[1] It appears that Plaintiff intended to name LendingTree, LLC as opposed to LendingTree, Inc.  That does not change the arbitration analysis.

US2008 13984909 4

Before receiving any of the challenged communications, Plaintiff agreed to the Terms and Conditions included on Defendant Best Rate Holdings, LLC's ("Best Rate") website. Those Terms and Conditions mandate that all disputes related to Plaintiff's use of Best Rate's services, including Plaintiff's providing contact information to be provided to LendingTree or requesting to be contacted by LendingTree, be resolved through binding arbitration. LendingTree can enforce the arbitration provision because it is an intended third-party beneficiary. Indeed, the overriding presumption in favor of enforcing arbitration clauses is strong in this case, given that the Complaint asserts that the conduct of the defendants was inextricably intertwined. Accordingly, all of Plaintiff's claims must be arbitrated.[2]

## BACKGROUND

LendingTree is an online exchange that connects consumers with multiple third-party lenders, banks, and credit partners who compete for the consumers' business.[3] Best Rate is a mortgage marketing company that provides leads, contact lists and other services to LendingTree. (ECF No. 1 at p. 3). Plaintiff alleges that LendingTree and Best Rate "worked together" using SMS messaging campaigns to solicit consumers, including Plaintiff, for LendingTree's products. (ECF No. 1 at p. 3). According to Plaintiff, "Defendants utilized an automatic telephone dialing system" to send "unauthorized SMS text messages to cellular subscribers who . . . expressly 'opted-out' or requested not to receive text messages. . . ." (ECF No. 1 at p. 4).

After allegedly receiving an email advertisement message from Defendants in February 2017, Plaintiff voluntarily shared his contact information with Defendants "to learn more" about

---

[2] LendingTree denies the material allegations of the Complaint and respectfully reserves the right to contest liability, including by filing a Rule 12(b)(6) motion to dismiss, in this Court if the motion to compel arbitration is denied.

[3] LendingTree is not a lender.

2

an advertised one-percent mortgage loan. (ECF No. 1 at pp. 6-7). During the sharing of his contact information, Plaintiff acknowledged, and agreed to be bound by, the terms and conditions presented on Best Rate's website. Specifically, when he initiated the sharing of information and a request for quote with Best Rate, he was presented with the following prompt:

> We take your privacy seriously. By clicking "GET A QUOTE", you agree to share your information with up to 4 participating lenders (potentially including Quicken Loans & Loan Depot), which may include the following lenders and partners regarding financial services and credit related offers and for them to contact you (including through automated means: e.g. autodialing, text and pre-recorded messaging) via telephone mobile device (including SMS and MMS) and/or email, even if you are charged for the call or your telephone number is currently listed on any state, federal or corporate Do Not Call list. You agree that this consent is not a condition of purchase. That this is not a loan application and you are under no obligation.
>
> By clicking "Get A Quote" you are accepting our Privacy Policy and Terms and Conditions.

(ECF No. 18-1, at ¶ 5.) The Terms and Conditions accepted by Plaintiff provide that:

> [e]ach end-user visitor to the Site . . . agrees to the Best Rate Referrals™ Website Terms and Conditions ("Terms and Conditions"), in their entirety, when she/he: (a) accesses or uses the Site; . . . and (d) utilizes the various contact forms and/or contact information made available on the Site as a means to contact directly, or request to be contacted by, Company and/or Company's third-party mortgage and/or home loan-related product and/or service providers ('Third Party Mortgage Service Providers').

(ECF No.. 18-1, at Ex. 1, PageID 91). The Terms and Conditions also include an contain an arbitration provision, which is set out below in Section I of the Argument. (*Id*).

After allegedly receiving text messages on a "regular basis," Plaintiff decided to opt-out from any further messages six months later in September 2017[4] by replying to such messages with variations of the word "stop." (ECF No. 1 at pp. 7-8). Plaintiff contends that he continued receiving the unauthorized text messages despite his attempts to opt-out. Despite that Plaintiff

---

[4] The exact date on which Plaintiff sent his first request to opt-out is unclear. It appears from the Complaint (based on screen shots of Plaintiff's smartphone) to have occurred sometime in August – September 2017. (¶¶27, 32).

3

agreed to arbitrate any disputes related to the services of Best Rate, he asserts claims before this Court on behalf of himself and a putative class for Defendants' alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. §227.

Neither Plaintiff, nor any class member, can sue in this Court because the putative claims at issue are subject to the binding, enforceable, and mandatory arbitration agreement. LendingTree respectfully refers to and incorporates by reference Best Rate's description of the arbitration agreement at issue and the manner in which Plaintiff agreed to it. For the reasons explained below, LendingTree is entitled to arbitration of any claims against it under this arbitration clause.

## ARGUMENT

1. **Plaintiff Voluntarily Agreed to Arbitrate His Claims, and the Arbitration Provision Covers Plaintiff's Allegations Concerning LendingTree**

Plaintiff filled out a form on Best Rate's website and requested a quote for a mortgage. Best Rate made acceptance of Terms and Conditions a prerequisite to use of its website. Specifically, Best Rate's website made clear that "[b]y clicking 'GET A QUOTE' you are accepting our Privacy Policy and Terms and Conditions." (ECF No. 18-1, at ¶ 5). The Terms and Conditions expressly noted that if the website user disagreed with the Terms and Conditions, the user was not authorized to access or otherwise use the website:

> **PLEASE REVIEW THE TERMS OF THE AGREEMENT CAREFULLY. IF A USER DOES NOT AGREE WITH THE TERMS OF THE AGREEMENT IN THEIR ENTIRETY, THAT USER IS NOT AUTHORIZED TO USE THE SITE OFFERINGS IN ANY MANNER OR FORM.**

(ECF No. 18-1, at Ex. 1, PageID 91).

Critical to this Motion, the Terms and Conditions also contain "Dispute Resolution Provisions" that expressly provide all disputes must be resolved through arbitration:

4

> **Should a dispute arise concerning the Site Offerings, the terms and conditions of the Agreement or the breach of same by any party hereto: (a) the parties agree to submit their dispute for resolution by arbitration before the American Arbitration Association in New York, New York, in accordance with the then current Commercial Arbitration rules of the American Arbitration Association; and (b) you agree to first commence a formal dispute proceeding by completing and submitting an Initial Dispute Notice which can be found Here.**

(ECF No. 18-1, at Ex. 1, PageID 99 - 100) ("Arbitration Provision").

The Terms and conditions expressly define the "Site Offerings" that are subject to the Arbitration Provision to include "utili[sing] the various contact forms and/or contact information made available on the Site as a means to contact directly, or request to be contacted by, Company and/or Company's third-party mortgage and/or home loan-related product and/or service providers ("Third Party Mortgage Service Providers")" (Id. at PageID 91.) In other words, the Arbitration Provision covers disputes concerning contacts related to third party mortgage service providers, which LendingTree is alleged to be.

Plaintiff admits that he used the website and "enter[ed] his contact information to learn more," thereby agreeing to the Terms and Conditions. (ECF No. 1 at p. 6). Those Terms and Conditions encompassed among its Site Offerings Plaintiff's interaction with LendingTree. And the binding Arbitration Provision extends to disputes regarding the Site Offerings. Accordingly, the Arbitration Provision covers the allegations against LendingTree in this case.

**2.     As a Matter of Federal Law, the Arbitration Provision Is Enforceable**

The validity of the Arbitration Provision itself is governed by the Federal Arbitration Act ("FAA"). *Walthour v. Chipio Windshield Repair, LLC,* 745 F.3d 1326, 1329 (11th Cir. 2014). "The purpose of the FAA is to give arbitration agreements the same force and effect as other contracts." *Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1367 (11th Cir. 2005).

5

Importantly, the policy embodied in the FAA preempts any state substantive law or procedural policies to the contrary. *KMPG LLP v. Cocchi*, 132 S. Ct. 23, 25 (2011). Section 2 of the FAA states that an agreement to arbitration "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. This "liberal federal policy favoring arbitration agreements" is well recognized by the Supreme Court. *Perry v. Thomas,* 482 U.S. 483, 489 (1987).

Here, Plaintiff had two choices: (1) agree to the Arbitration Provision and request a quote; or (2) discontinue his use of Best Rate's website and its affiliated lenders' services. Plaintiff decided to agree to the Arbitration Provision and request a quote, and he must abide by that decision. By agreeing to the Arbitration Provision, Plaintiff created a valid, irrevocable, and enforceable agreement to arbitrate any dispute that arose with his use of Best Rate's Site Offerings, which included any contact with Third Party Mortgage Service Providers (which, under Plaintiff's allegations, LendingTree is).

**3.    LendingTree Is Entitled To Enforce the Arbitration Provision as an Intended Third-Party Beneficiary**

A nonsignatory may force arbitration 'if the relevant state contract law allows [it] to enforce the agreement' to arbitrate." [5] *Maldonado v. Mattress Firm, Inc., et al.,* 2013 WL 2407086, *5 (M.D. Fla. June 3, 2013) (citations and quotation marks omitted). LendingTree is entitled to enforce the arbitration provision as an intended third-party beneficiary because it "receive[d] a 'direct benefit' from a contract containing an arbitration clause." *Spano v. V & J Nat'l Enterprises, LLC*, 264 F. Supp. 3d 440, 453 (W.D.N.Y. 2017) (quoting *Ogden Power Dev.– Cayman, Inc. v. PMR Ltd. Co.*, No. 14 Civ 8169 (PKC), 2015 WL 2414581, at *9 (S.D.N.Y. May 21, 2015); *Blu-J, Inc. v. Kemper C.P.A. Group,* 916 F.2d 637, 640 (11th Cir. 2014) (noting

---

[5] The Terms and Conditions provide that they "shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflict of law principles)." (ECF No. 18-1, at Ex. 1, PageID 99). LendingTree has provided citations to Florida law herein as a courtesy to the Court to demonstrate that New York and Florida law are consistent with respect to the arguments asserted herein.

6

that to qualify as a third party beneficiary, "it must be shown that the intent and purpose of the contracting parties was to confer a direct and substantial benefit upon the third party."); *Jackson v. BellSouth Telecommunications,* 372 F.3d 1250, 1283 (11th Cir. 2004) (same).

The Complaint alleges that LendingTree used Best Rate's services to procure leads for its business. (ECF No. 1 at p. 3). Plaintiff further alleges that the reason he initially agreed to receive the text message communications at issue was because he was interested in learning more about a one percent loan mortgage product advertised "by Defendants." (ECF No. 1 at p. 6-7). Stated differently, the Complaint alleges that Best Rate and Plaintiff contracted together so that Plaintiff would be directed to LendingTree to potentially be connected with lenders who might offer Plaintiff's desired mortgage product. This contract was intended to primarily and directly benefit LendingTree, as well as Plaintiff and Best Rate.[6] As a third-party beneficiary, LendingTree is entitled to enforce the Arbitration Provision. *See Spear, Leeds & Kellogg v. Cent. Life Assur. Co.*, 85 F.3d 21, 26 (2d Cir. 1996) ("[D]ecisional law recognizes that the FAA requires the enforcement of an arbitration agreement not just in favor of parties to the agreement, but also in favor of third party beneficiaries of the members' agreement . . .."); *Centocor, Inc. v. Kennedy Inst. of Rheumatology*, No. 08 CIV. 8824 (DC), 2008 WL 5082883, at *2 (S.D.N.Y. Dec. 1, 2008) (stating "the relationships among the parties developed in a manner that [makes] it unfair for [one party] to claim that its agreement to arbitrate ran only to [another party] and not to [a third party]"); *Mims v. Global Credit and Collection Corp.,* 803 F. Supp. 2d 1349, 1356 (S.D. Fla. 2011) (non-party to a contract may compel arbitration if the non-party is determined to be a

---

[6] The specific reference to LendingTree within the Terms and Conditions is not necessary for it to qualify as a third- party beneficiary so long as the parties intended to confer some benefit on LendingTree. As Best Rate allegedly intended to procure a lead for LendingTree, and Plaintiff allegedly intended to find a one-percent loan for military veterans through his use of LendingTree's services, both parties intended to confer a benefit on LendingTree. *See Denney v. BDO Seidman, LLP*, 412 F.3d 58, 70 (2d Cir. 2005) (allowing non-signatory to enforce arbitration clause); *M-I v. Utility Directional Drilling, Inc.,* 872 So. 2d 403, 405 (Fla. 3rd DCA 2004) (rejecting claim that a non-signatory to a settlement agreement was not a third-party intended beneficiary simply because their name was not included in the agreement).

third- party beneficiary to the contract);; *Lion Gables Realty Ltd v. Randall Mechanical,* 65 So. 3d 1098, 1099 (5th DCA 2011) (holding that arbitration provisions are binding on intended, third-party beneficiaries so long as the contracting parties intended to "primarily and directly benefit the third party"); *Seth v. Rajagopalan, et al.,* 2013 WL 11927712, *10 (S.D. Fla. Jan. 25, 2013) (holding that a non-signatory to an arbitration agreement may be bound to arbitrate if they qualify as a third-party beneficiary).

4. **Plaintiff Also Is Estopped From Declining to Arbitrate His Putative Claims Against LendingTree**

District courts in the Second Circuit have applied an estoppel theory to require arbitration of claims against a non-signatory to an arbitration agreement where: "(1) the signatory's claims arise under the subject matter of the underlying agreement, and (2) whether there is a close relationship between the signatory and the non-signatory party." *Moss v. BMO Harris Bank, N.A.*, 24 F. Supp. 3d 281, 288 (E.D.N.Y. 2014) (compelling arbitration against non-signatories), *motion for relief from judgment granted*, 114 F. Supp. 3d 61 (E.D.N.Y. 2015) (granting relief from arbitration where arbitral forum was unavailable), *aff'd sub nom. Moss v. First Premier Bank*, 835 F.3d 260 (2d Cir. 2016). They appear, however, to have been applying federal law as opposed to law of any particular state. *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d Cir. 2008) (noting that a non-signatory can enforce an arbitration clause when "the subject matter of the dispute was intertwined with the contract providing for arbitration" and a "relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.").

The Eleventh Circuit has held that:

8

> [A]pplication of equitable estoppel is warranted ... when the signatory [to the contract containing the arbitration clause] raises allegations of ... substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise, the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (citation and internal quotation marks omitted), *abrogated on other grounds*, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S.Ct. 1896, 1902, 173 L.Ed.2d 832 (2009). Florida law would require the arbitration of Plaintiff's claims. *Shetty v. Palm Beach Radiation Oncology Ass'ns–Sunderam K. Shetty, M.D., P.A.*, 915 So.2d 1233, 1235 (Fla. 4th DCA 2005) (holding that a non-signatory could encorce an arbitration clause "'when the signatory to the contract containing the arbitration clause raises allegations of concerted conduct by both the non-signatory and one or more of the signatories to the contract.'") (quoting *Armas v. Prudential Sec., Inc.*, 842 So.2d 210, 212 (Fla. 3d DCA 2003)).

Under either test, Plaintiff is estopped from denying arbitration here. As is noted above, LendingTree's alleged relationship with Best Rate (as a third party mortgage service provider) is encompassed within the Terms and Conditions. Further, Plaintiff's claims are all directed towards Best Rate and LendingTree collectively, as though the parties are largely interchangeable. Indeed, the Complaint repeatedly alleges that Defendants effectively acted together, stating that:

- "their [the Defendants'] practice of sending unsolicited text messages to cellular telephones. . . ." (ECF No. 1 at p. 1);
- "Defendants worked together to reach a broad array of consumers" (ECF No. 1 at p. 3);
- "Defendants solicited consumers" (ECF No. 1 at p. 3);

9

US2008 13984909 4

- "Defendants made, or had made on their behalf, the same . . . text messages" (ECF No. 1 at p. 4);

- "Defendants utilized an automatic telephone dialing system" (ECF No. 1 at p. 4); and

- "Defendants send unauthorized SMS text messages to cellular subscribers. . . ." (ECF No. 1 at pp. 4-5).

Indeed, in most of its allegations and certainly with respect to the material allegations, the Complaint makes no distinction between the actions undertaken by either Defendant. Plaintiffs's claim against each defendant will be virtually duplicative with the same witnesses, the same documents, and the same testimony. Under these circumstances, Plaintiff is estopped from refusing to arbitrate his claims against LendingTree.

**5.   Plaintiff Waived the Right to Participate in a Class Action Against LendingTree**

For the reasons set out in Best Rate's Motion to Compel Arbitration, Plaintiff has waived its right to bring a class action related to the Terms and Conditions as part of the Arbitration provision. Based on those arguments, and the arguments and authorities set out herein, Plaintiff has also waived the right to participate in a class action against LendingTree.

**6.   If The Court Denies LendingTree's Motion to Compel Arbitration, It Should Nonetheless Stay This Action as to LendingTree**

Under 9 U.S.C. § 3, a court "shall" on application of a party, stay an action pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." As Plaintiff's claim against Best Rate must be arbitrated, and that claim is inextricably intertwined with the claim against LendingTree, the case should at a minimum be stayed to the extent it is not compelled to arbitration in its entirety.

## CONCLUSION

Based on the foregoing, LendingTree respectfully requests that the Court allow LendingTree to enforce the Arbitration Provision and stay this proceeding pending the conclusion of the arbitration.

## LOCAL RULE 3.01(G) CERTIFICATE OF COUNSEL

Pursuant to Local Rule 3.01(g), counsel for Defendant conferred with counsel for Plaintiff and counsel for Plaintiff does not consent to the relief requested in this motion.

Respectfully submitted this 16th day of March, 2018.

*s/ Ethan M. Knott*
Ethan M. Knott
Florida Bar No. 0116421
**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
(404) 815-6500
(404) 815-6555 (facsimile)

*and*

Joseph S. Dowdy, Esq.*
NC Bar No. 31941
Email: jdowdy@kilpatricktownsend.com
**KILPATRICK TOWNSEND & STOCKTON LLP**
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
Telephone: (919) 420-1700

*\*Pro Hac Vice Application Forthcoming*

**COUNSEL FOR DEFENDANT LENDINGTREE, INC.**

US2008 13984909 4

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of March, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to the following:

> Ryan S. Shipp, Esq.
> Florida Bar Number: 52883
> Law Office of Ryan S. Shipp, PLLC
> 814 W. Lantana Rd. Suite 1
> Lantana, Florida 33462
> (561) 699-0399
> Primary Email: Ryan@shipplawoffice.com
>
> Steven L. Woodrow
> (swoodrow@woodrowpeluso.com)*
> Patrick H. Peluso
> (ppeluso@woodrowpeluso.com)*
> Woodrow & Peluso, LLC
> 3900 East Mexico Ave., Suite 300
> Denver, Colorado 80210
> Telephone: (720) 213-0675
> Facsimile: (303) 927-0809
>
> *Counsel for Plaintiff and the Putative Class*
>
> *admitted pro hac vice

*s/Ethan M. Knott*
Ethan M. Knott

US2008 13984909 4